UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CHERYLL CLEWETT** on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**BENEFYTT TECHNOLOGIES, INC.**, **TOGETHERHEALTH PAP, LLC** and **TOTAL INSURANCE BROKERS, LLC**,<br><br>*Defendants*. | Civil Case No.: 4:22-cv-3993<br><br>**COMPLAINT - CLASS ACTION** |

## INTRODUCTION

1. This action arises out of Defendants, Benefytt Technologies, Inc.'s ("Benefytt"), TogetherHealth PAP, LLC ("TogetherHealth"), and Total Insurance Brokers, LLC ("Total Insurance") (collectively, "Defendants") aggressive marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and provisions of the Texas Business & Commerce Code.

2. Defendants place, or have placed on their behalf, telemarketing calls to individuals on the National Do-Not-Call Registry without prior express written consent (or any consent whatsoever).

3. These calls are part of an aggressive Medicare enrollment marketing campaign targeting senior citizens.

4. Defendants continue to call individuals even after they request not to be called again.

5. In addition, Defendants utilize "spoofed" telephone numbers or misleading or inaccurate caller identification information.

1

6. Accordingly, Plaintiff brings this TCPA action on behalf of herself and four classes of similarly situated individuals under 47 U.S.C. §§ 227(c) and Texas Business & Commerce Code § 305.053.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

8. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because it is so closely related to the federal claims that they form a single case or controversy.

9. This Court has jurisdiction over Defendants because Defendants conduct business transactions in this District and have committed tortious acts in this District.

10. Venue is proper in this District because Defendants conduct significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

11. Plaintiff Cheryll Clewett ("Mrs. Clewett") is, and at all times mentioned herein was, a citizen and resident of Spring, Texas.

12. Mrs. Clewett is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Mrs. Clewett is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

14. Defendant Benefytt Technologies, Inc. ("Benefytt") is and at all times mentioned herein was, a Delaware corporation headquartered at 3450 Buschwood Park Drive, Tampa,

2

Florida 33618.

15. Benefytt is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

16. Benefytt is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

17. Defendant TogetherHealth PAP, LLC ("TogetherHealth") is and at all times mentioned herein was, a Delaware limited liability company headquartered at 3450 Buschwood Park Drive, Tampa, Florida 33618.

18. TogetherHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

19. TogetherHealth is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

20. Total Insurance Brokers, LLC ("Total Insurance") is and at all times mentioned herein was, a Delaware limited liability company headquartered at 3450 Buschwood Park Drive, Tampa, Florida 33618.

## TCPA BACKGROUND

21. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

22. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

3

*Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

23. These regulations are codified at 47 CFR 64.1200(c)(1-2).

24. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

25. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

26. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

27. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

28. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

29. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

30. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists

4

to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

31. These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

32. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d) (1, 2, 3, 6).

33. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

34. Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that it has implemented the required policies and procedures.

35. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company.

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

> In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

36. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

37. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

38. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

39. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances,

including as described herein as to Defendants, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

40. Mrs. Clewett is the subscriber to a cellular telephone number ending in 8654.

41. The telephone number ending in 8654 is used primarily for residential purposes.

42. The telephone number ending in 8654 has been on the National Do-Not-Call Registry since April 22, 2005.

43. On October 10, 2021, at approximately 9:58am, Defendants called the telephone number ending in 8654 and displayed telephone number 346-577-9595 on the Caller ID.

44. Upon information and belief, Defendants caused the caller identification information to be inaccurately displayed with a Houston, Texas area code to make it more likely that its calls would be answered.

45. On October 10, 2021 at approximately 2:08pm, Mrs. Clewett received a telephone call from (254) 347-5074.

46. Upon information and belief, Defendants caused the caller identification information to be inaccurately displayed with a Waco/Temple/Killeen area code to make it more likely that its calls would be answered.

47. Mrs. Clewett answered the telephone and the caller identified themselves as calling from "Medicare Assistance."

48. The caller stated they were attempting to reach Mrs. Clewett's husband and were calling in response to a "prior opt-in" by Mr. Clewett.

49. Upon information and belief, Defendants' telemarketers are trained to reference a fictious "prior opt-in" in an effort to trick the callee into thinking that the call is in response to an

7

inquiry and not a cold call.

50. Mrs. Clewett informed the caller that Mr. Clewett did not opt-in and requested that the caller not call again.

51. On October 10, 2021 at approximately 2:49pm, Defendants called the telephone number ending in 8654 and displayed telephone number (254) 277-8339 on the Caller ID.

52. Mrs. Clewett answered the telephone and the caller identified themselves as calling from "Medicare Assistance."

53. The caller stated they were calling in response to "Mr. Clewett's online inquiry regarding his Medicare insurance options."

54. Mrs. Clewett responded that "there was no online inquiry."

55. The caller then stated, "at some point in time, he opted in to receive options for Medicare."

56. Mrs. Clewett protested and again requested that the caller not call again.

57. On October 10, 2021 at approximately 6:15pm, Defendants called the telephone number ending in 8654 and displayed telephone number (346) 577-9595 on the Caller ID.

58. Ms. Clewett did not answer the call.

59. Immediately thereafter, on October 10, 2021 at approximately 6:15pm, Defendants called the telephone number ending in 8654 and displayed telephone number (346) 577-9595 on the Caller ID.

60. Mrs. Clewett answered the telephone and the caller identified herself as calling from "Medicare Assistance."

61. Again, the caller stated they she was calling in response to "Mr. Clewett's online inquiry regarding his Medicare insurance options," and that her goal was to connect Mr. Clewett

to a licensed specialist in the State of Texas.

62. Having had no success with simply asking the caller to stop calling, Mrs. Clewett went along with the call in an effort to determine the true identity of the company responsible for the calls.

63. The caller transferred Mrs. Clewett to a male telemarketer that stated he was with the "Medicare Coverage Helpline" and wanted to identify the Medicare benefits Mr. Clewett is entitled to.

64. The telemarketer further stated that the name of the company he was calling from was Defendant TogetherHealth and Defendant Total Insurance.

65. The telemarketer acknowledged that it was "weird" that he was calling on behalf of multiple companies.

66. The telemarketer stated that he was located in Tampa, Florida.

67. When asked if there was a website, the telemarketer was unsure and had to ask a manager.

68. After conferring with a manger, the telemarketer advised that the applicable website was [www.healthinsurance.com](www.healthinsurance.com).

69. Mrs. Clewett asked to speak with a manager, complained about the calls she was receiving and asked for a mailing address so she could send a letter.

70. Prior to the conclusion of the call, Mrs. Clewett asked not to be called again.

71. Mr. Clewett and Mrs. Clewett did not provide prior express invitation or permission or consent for these calls. To the contrary, Mrs. Clewett told Defendants not to call again multiple times.

72. The TCPA's requirement that telemarketers (a) identify themselves, (b) identify

9

the name of the person or entity on whose behalf the calls are being made, and (c) provide a telephone number or address at which the person or entity may be contacted is material.

73. Absent identifying information being provided in the beginning of calls, the called parties have no idea who is really calling them, or why.

74. Telemarketers or "lead generators" often intentionally delay identifying themselves until further into the call because they want to avoid accountability for their illegal marketing practices.

75. Failure and/or refusal to identify oneself or those on whose behalf calls are made during a telemarketing call is a substantial and material violation of the recipient's privacy rights.

76. Failure and/or refusal to identify oneself or those on whose behalf calls are made during a telemarketing call also allows companies like Defendants to avoid accountability for their own bad acts, and the bad acts of their vendors and agents.

77. Defendants' agents, or those otherwise making calls on Defendants' behalf, did not have written do-not-call policies or procedures at the time of the calls to Plaintiff and the classes defined below.  Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the repetitive calls after Mrs. Clewett directly asked not to be contacted.

78. During all relevant times, Defendants maintained the power and right of interim control over their agents' and caller's actions with respect to the telemarketing complained of herein.

79. Mrs. Clewett and other class members reasonably believed that the caller that called them had Defendants' authority for the calls at issue, based on Defendants' own actions—

accepting transfers of such calls after screening and by retaining revenue when consumers purchased insurance plans as a result of such calling.

80. Defendants knew that its agents or their vendors were telemarketing on their behalf regardless of consumer do-not-call requests, and without having instituted proper procedures to stop calls to consumers who ask not to be contacted, yet it did nothing to prevent or stop the calling at issue.

81. Defendants' actions and omissions with regard to the telemarketing complained of herein justify a reasonable assumption that it consented to the telemarketing at issue.

82. Defendants knowingly accepted the benefits that originated through the nonconsensual telemarketing at issue. Defendants knowingly compensated its agents (and/or their telemarketing vendors) for such, Defendants accepted the advertising benefit in having its insurance products solicited to Plaintiff and other class members, and it further benefitted by retaining money paid by call recipients for the insurance products purchased as a result of the illegal calling at issue on an ongoing basis, thereby ratifying such calls.

83. Alternatively, to the extent Defendants claim they lacked full knowledge about every aspect of the telemarking-based lead generation performed on its behalf, it failed to investigate further despite knowledge that would have caused a reasonable person to do so.

84. Defendants' violations were negligent. Alternatively, they were willful and knowing.

85. Plaintiff and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, the Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. The calls were annoying and a nuisance, and wasted the time of Plaintiff and

the classes. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

86. Defendants placed, or had placed on their behalf, two or more telephone solicitations to Mrs. Clewett, whose number was on the National Do-Not-Call Registry at the time of the calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

87. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per call through 47 U.S.C. § 227(c).

88. Plaintiff is entitled to an additional $1,500 per call if Defendants' actions are found to be knowing or willful.

89. Defendants placed two or more telemarketing calls to Plaintiff, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

90. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

91. Plaintiff is entitled to an additional $1,500 per call if Defendants' actions are found to be knowing or willful.

92. In addition, pursuant to § 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

93. As set forth above, Defendants violated 47 U.S.C. § 227, or a regulation adopted

under that provision.

94. Accordingly, Plaintiff is entitled to a permanent injunction, and the greater of $500.00 for each violation or Plaintiff's actual damages for each call made by Defendants. *See* Tex. Bus. & Com. Code § 305.053(b).

95. Plaintiff is entitled to an additional $1500 per call if Defendants' actions are found to be knowing or intentional. *See* Tex. Bus. & Com. Code § 305.053(c).

## CLASS ACTION ALLEGATIONS

96. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two categories of proposed "Classes," the "TCPA Classes" and the "Texas Class" as defined as follows:

### THE TCPA CLASSES

Plaintiff and all persons within the United States to whose telephone number Defendants placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry at the time of the calls from four (4) years prior the filing of the Complaint.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Defendants placed (or had placed on its behalf) two or more telemarketing calls or messages in a 12-month period from four (4) years prior the filing of the Complaint.

("Policy Class")

### TEXAS CLASS

Since November 12, 2017, Plaintiff and all residents of the State of Texas to whose telephone number Defendants: (1) placed (or had placed on its behalf) a call in violation of 47 U.S.C. § 227, from four (4) years prior the filing of the Complaint.

("Texas § 305.053 Class")

(The TCPA Classes and the Texas Class are collectively referred to herein as the "Classes.")

97. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

98. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

99. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

   a. The time period(s) during which Defendants placed its calls;

   b. The telephone numbers to which Defendants placed its calls;

   c. The telephone numbers for which Defendants had prior express written consent;

   d. The purposes of such calls; and

   e. The names and addresses of Class members.

100. The Classes are comprised of hundreds, if not thousands, of individuals.

101. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

   a. Whether Defendants (or someone acting on their behalf) place telemarketing calls;

   b. Whether Defendants (or someone acting on their behalf) obtain prior express written consent;

   c. Whether Defendants or the entities with which they contract place solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

    d. Whether Defendants had the required policies and procedures prior to making telemarketing calls;

    e. Whether Plaintiffs and the Classes were damaged thereby, and the extent of damages for such violations; and

    f. Whether Defendants should be enjoined from engaging in such conduct in the future.

102. Plaintiff is a member of the Classes in that Defendants placed two or more calls for telemarketing purposes, in a one-year period to the telephone number ending in 8654, without prior express written consent, and after Mrs. Clewett asked Defendants to stop, and while the telephone number ending in 8654 was on the National Do-Not-Call Registry.

103. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

104. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

105. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

106. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

107. Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

108. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

109. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

110. Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the TCPA 227(c) Class)

111. Plaintiff and the proposed Registry Class incorporate the foregoing allegations as if fully set forth herein.

112. Defendants made, or had made on their behalf, telephone calls constituting telephone solicitations to Plaintiff and the putative Registry Class Members.

113. The telephone number ending in 8654 and the putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

114. Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

115. Plaintiff and the putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

116. Plaintiff and the putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

### SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the Policy Class)

117. Plaintiff and the proposed Policy Class incorporate the foregoing allegations as if fully set forth herein.

118. Defendants placed numerous calls for telemarketing purposes to the telephone number ending in 8654 and the putative Policy Class Members' telephone numbers.

119. Defendants did so despite not having a written policy pertaining to "do not call" requests.

120. Defendants did so despite not having such a policy available "upon demand."

121. Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

122. Defendants did so despite not recording or honoring "do not call" requests.

123. Defendants did so without complying with the identification and disclosure requirements. 47 C.F.R. § 64.1200(d)(4).

124. Defendants placed two or more telemarketing telephone calls to the telephone number ending in 8654 and the putative Policy Class Members' telephone numbers in a 12-month period.

125. Plaintiff and the putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

126. Plaintiff and the putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
### Violations of Texas § 305.053 Class
### (On Behalf of Plaintiff and the Texas § 305.053 Class)

127. Plaintiff and the proposed Texas § 305.053 Class incorporate the foregoing allegations as if fully set forth herein.

128. Defendant placed, or had placed on its behalf, telemarketing telephone calls to the telephone number ending in 8654 and Texas § 305.053 Class Members' telephone numbers.

129. Each of these calls violated 47 U.S.C. § 227.

130. Plaintiff and Texas § 305.053 Class Members are entitled to:

   a. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

   b. the greater of $500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages (*see* Tex Bus. & Com. Code §304.053(b);

   c. the greater of $1,500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

   A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing their counsel as Class Counsel;

   B. An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(b);

   C. An order declaring that Defendants' actions, as set out above, violate Tex. Bus. & Com. Code § 302.101.

   D. An award of injunctive and other equitable relief as necessary to protect the

interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

      E.      An award of statutory damages;

      F.      An award of treble damages; and

      G.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** November 16, 2022  By: */s/ Chris R. Miltenberger*
 Chris R. Miltenberger
 Texas Bar Number: 14171200

 **The Law Office of Chris R. Miltenberger, PLLC**
 1360 N. White Chapel, Suite 200
 Southlake, Texas 76092
 Tel: (817) 416-5060
 Fax: (817) 416-5062
 chris@crmlawpractice.com

 s/ *Max S. Morgan*
 Max S. Morgan, Esquire
 Eric H. Weitz, Esquire
 **THE WEITZ FIRM, LLC**
 1515 Market Street, #1100
 Philadelphia, PA 19102
 Tel: (267) 587-6240
 Fax: (215) 689-0875
 max.morgan@theweitzfirm.com
 eric.weitz@theweitzfirm.com
 (*Pro Hac Vice* Forthcoming)